**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| ROBERT ROMERO | CIVIL ACTION NO. 23-0442 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| WESTWIND HELICOPTERS INC., ET AL. | MAGISTRATE JUDGE WHITEHURST |

*consolidated with*

| | |
|---|---|
| JEREMY HOLLIER | CIVIL ACTION NO. 23-0484 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| WESTWIND HELICOPTERS INC., ET AL. | MAGISTRATE JUDGE WHITEHURST |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by Defendants Westwind Helicopters, Inc. ("Westwind") and Starr Indemnity and Liability Company ("Starr") (collectively, "Defendants"). See Record Document 62. Plaintiffs Jeremy Hollier ("Hollier") and Robert Romero ("Romero") opposed. See Record Documents 67 & 69. Defendants replied. See Record Document 73. For the reasons set forth below, Defendants' Motion for Summary Judgment (Record Document 62) is **GRANTED IN PART and DENIED IN PART**.

**FACTUAL BACKGROUND**

This case arises from a helicopter crash that occurred on October 26, 2022, in the Gulf of Mexico. See Record Document 62-1 at 7. At the time of the incident, Plaintiffs Romero and Hollier were passengers aboard a Bell 407 helicopter (FAA Registration No. N34BM) owned and operated by Defendant Westwind and piloted by James Bullock ("Bullock"), a Westwind employee. See id. The helicopter was returning from the Ship

Shoal 349 offshore platform to Abbeville, Louisiana, when it crashed into the Gulf. <u>See id.</u> at 7–8.

On October 12, 2022, two weeks before the flight, Bullock passed a Federal Aviation Administration ("FAA") Class 1 medical examination, which certified him as medically fit to operate a commercial aircraft. <u>See id.</u> at 8. Westwind contends that the company had no notice that Bullock had any health issues or symptoms that could have predicted the medical emergency that occurred during flight. <u>See id.</u> According to Westwind, the flight was uneventful until Bullock experienced a sudden and unforeseeable medical incapacitation, causing the helicopter to descend and impact the water. <u>See id.</u> However, Plaintiffs dispute this characterization.

Romero contends that he was seated next to Bullock during the flight and that approximately 10-15 minutes after takeoff, Bullock stated that he had just blacked out and indicated that he did not feel well. <u>See</u> Record Document 69 at 2. Romero asserts that he repeatedly urged Bullock to land on a nearby platform or in the water, but Bullock continued flying for another 10-15 minutes, during which he said, "I'm overheating" and "I'm not going to make it." <u>See id.</u> Romero states that Bullock's body went limp, and the aircraft descended rapidly into the Gulf. <u>See id.</u> at 2–4.

Both Plaintiffs survived the crash. <u>See id.</u> at 4. Plaintiffs assert they remained in the water for approximately two hours before being rescued. <u>See id.</u> Plaintiffs further allege that Westwind's Emergency Locator Transmitter ("ELT") failed to activate, delaying notification to the U.S. Coast Guard and prolonging their exposure and injuries. <u>See</u> Record Document 67 at 4–5.

Plaintiffs filed this action in the Sixteenth Judicial District Court, Iberia Parish, Louisiana, asserting claims under Louisiana state law for negligence and vicarious liability. <u>See</u> Record Document 1-1. Defendants removed the matter to this Court pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 28 U.S.C. § 1331, and 28 U.S.C. § 1332. <u>See</u> Record Document 1.

Defendants moved for summary judgment (Record Document 62), arguing there is no genuine issue of material fact as to any alleged breach of duty or causation and that all claims are preempted by federal aviation law. Plaintiffs Romero and Hollier filed separate oppositions (Record Documents 67 & 69), asserting genuine factual disputes regarding Bullock's in-flight conduct, Westwind's maintenance of the ELT, and the company's delay in contacting rescue authorities. Defendants filed a reply (Record Document 73), maintaining that Plaintiffs' evidence is inadmissible and that federal law exclusively governs all aspects of aviation safety.

## LAW AND ANALYSIS

### I.    Summary of the Arguments

Defendants move for summary judgment, arguing that Plaintiffs' negligence and vicarious liability claims are preempted by federal law. <u>See</u> Record Document 62-1 at 9–17. Defendants contend that the FAA occupies the field of aviation safety, leaving no room for the application of Louisiana state law. <u>See id.</u> Specifically, Defendants argue that the FAA comprehensively governs pilot medical certification and in-flight operations. <u>See id.</u> Because Bullock held a valid First-Class Medical Certificate at the time of the flight and no evidence suggests any regulatory noncompliance, Defendants maintain that all

claims premised on the pilot's medical condition or pre-flight fitness must fail. See id. at 11–17.

Defendants further assert that federal law also governs in-flight operations, including the pilot's decision-making and conduct during the flight. See id. at 20–21. Defendants contend that, because federal law defines the duty of care and the record lacks evidence of any violation of that standard, summary judgment should be granted in their favor. See id.

Plaintiffs Hollier and Romero oppose the motion, arguing that Louisiana state law applies as surrogate federal law under OCSLA. See Record Documents 67 at 6, 69 at 12. They contend that state negligence law may coexist with federal aviation regulations because Louisiana law is not inconsistent with the FAA's requirements. See Record Document 67 at 6. Plaintiffs further assert that the FAA's regulations do not address all aspects of Defendants' alleged negligence, particularly Westwind's post-flight response, including its delayed notification to the Coast Guard and the failure of the helicopter's ELT. See id. at 9–10.

In sum, Defendants assert that federal law exclusively governs pilot fitness and in-flight operations, while Plaintiffs argue that Louisiana negligence law may supplement the federal standards. See Record Documents 62, 67, & 69. The Court must determine (1) whether OCSLA jurisdiction applies, (2) whether federal aviation law preempts state negligence law for the various claims, and (3) whether there are any genuine issues of material fact remaining.

## II.     Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In applying this standard, the court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart Louisiana, L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. See id. If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S. at 323). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational trier of fact to find for the non-moving party ...." Id.

### III.    Analysis

####   a.  Applicable Law

Pursuant to OCSLA, this Court has subject matter jurisdiction over claims arising out of activities involving the exploration, development, and production of minerals on the outer continental shelf. See 43 U.S.C. § 1349(b)(1). The helicopter flight at issue originated from Ship Shoal 349, an offshore platform engaged in energy production in the Gulf of Mexico. See Record Document 62-1 at 7–8. Because the accident occurred during a flight directly connected to offshore mineral operations, OCSLA jurisdiction is proper.

The parties dispute which law governs Plaintiffs' claims. Defendants argue that the FAA occupies the field of aviation safety, preempting the application of state negligence law. See Record Document 62-1 at 11–17. Plaintiffs, however, contend that Louisiana law applies as surrogate federal law under OCSLA because it is not inconsistent with federal law. See Record Document 67 at 6.

In Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, the United States Court of Appeals for the Fifth Circuit explained that to determine whether state law applies as surrogate federal law under OCSLA, courts apply a three-part test: "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law." 589 F.3d 778, 783 (5th Cir. 2009) (quoting Union Texas Petroleum Corp. v. PLT Engr., Inc., 895 F.2d 1043, 1047 (5th Cir. 1990)). Here, the situs and maritime elements are not in dispute. The question is whether application of Louisiana negligence law would be inconsistent with federal law.

Under 43 U.S.C. § 1333(a)(2)(A), the law of the adjacent state can apply under OCSLA only when the state laws are "applicable and not inconsistent" with federal laws. The United States Supreme Court in <u>Parker Drilling Management Services, Ltd. v. Newton</u>, emphasized that only those state laws addressing issues not already governed by federal law may be adopted as surrogate federal law. 587 U.S. 601, 609 (2019). The Court explicitly stated that "to the extent federal law applies to a particular issue, state law is inapplicable." <u>Id.</u> at 610.

### 1. Bullock's Pre-Flight Medical Fitness

The issue of pilot medical qualification is comprehensively governed by federal law. Under 14 C.F.R. § 67, the FAA prescribes detailed medical standards for pilot certification. Under 14 C.F.R. § 61.23(a)(1), a pilot operating an aircraft must hold a valid First-Class Airman Medical Certificate. Pilots are required to undergo periodic evaluations by Aviation Medical Examiners ("AMEs") who are authorized to ensure pilots meet these standards. AMEs specifically evaluate pilots for any history or likelihood of losing consciousness, blacking out, fainting, or other episodes of incapacitation, like the one experienced by Bullock. <u>See</u> 14 C.F.R. § 67.109. These regulations establish the exclusive framework for determining a pilot's medical fitness.

Congress can preempt state law under the Supremacy Clause of Article VI of the Constitution. <u>See</u> U.S. Const. Art. VI, cl. 2. The type of preemption applicable here is implied field preemption. Implied field preemption occurs when Congress intends to occupy a given field, excluding state law from governing that same field. <u>See</u> <u>Schneidewind v. ANR Pipeline Co.</u>, 485 U.S. 293, 300 (1988). Congress's intent to occupy the field can be inferred from the pervasiveness of federal regulation or when

state regulation would interfere with Congressional objectives. <u>See id.</u> Courts have consistently recognized that the FAA occupies the field of pilot medical certification. <u>See Ventress v. Japan Airlines</u>, 747 F.3d 716, 721 (9th Cir. 2014); see also <u>French v. Pan Am Express, Inc.</u>, 869 F.2d 1, 4 (1st Cir. 1989).

It is undisputed that Bullock obtained a valid FAA First-Class Medical Certificate approximately two weeks before the accident. <u>See</u> Record Document 62-2 at 3. Plaintiffs present no evidence that Westwind or Bullock violated any FAA medical requirement or that any pre-flight medical issue was foreseeable. Because this area is fully regulated by federal law and there is no genuine dispute as to compliance with those regulations, the Court finds that Louisiana law does not apply to this aspect of Plaintiffs' claims. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** regarding the issue of Bullock's pre-flight medical fitness.

2.  In-Flight Operations by Bullock

Next, the Court must consider whether the in-flight operational conduct by Bullock is preempted by federal law. Several courts have held that these provisions establish a federal standard of care that displaces state tort standards for in-flight operations. In <u>Abdullah v. American Airlines, Inc.</u>, the Third Circuit explained that the FAA was created in response to air crashes between civil and military aircrafts that were operating under different flight rules. 181 F.3d 363, 368 (3d Cir. 1999). The FAA's purpose was to regulate all air safety and create a uniform framework. <u>See id.</u> at 368–72. For the FAA to serve as the exclusive framework, Congress enacted laws governing "pilot certification, pilot pre-flight duties, pilot flight responsibilities, and flight rules." <u>See id.</u> at 369 (internal citations omitted). Among those rules includes 14 C.F.R. § 91.3(a), which provides that the pilot in

command "is directly responsible for, and is the final authority as to, the operation of that aircraft." Additionally, 14 C.F.R. § 91.13(a) prohibits operation of an aircraft "in a careless or reckless manner so as to endanger the life or property of another."

The Abdullah court clarified that although the federal standard of care applies, traditional state law remedies continue to apply for violations of the federal standards. See 181 F.3d at 375. Thus, while federal law governs what constitutes negligent operation of an aircraft, state tort law continues to govern who may be held liable and what remedies are available. See id. Under the Third Circuit's approach, if Plaintiffs prove that Bullock breached the federal standard of care while acting within the course and scope of his employment, Westwind may be held vicariously liable under Louisiana law. See La. Civ. Code art. 2320.

The Ninth Circuit adopted similar reasoning to Abdullah in Ventress. 747 F.3d at 722. The Ninth Circuit held that "federal law preempts state law claims that encroach upon, supplement, or alter the federally occupied field of aviation safety and present an obstacle to the accomplishment of Congress's legislative goal to create a single, uniform system of regulating that field." See id. at 722–23.

This Court recognizes that it is not bound by the Third Circuit's decision in Abdullah, and that the federal circuit courts are not in complete agreement over this question of law. Although the Fifth Circuit has not explicitly adopted or rejected the Third Circuit's approach in Abdullah, the Fifth Circuit has provided some guidance. In 1995, the Fifth Circuit "undertook an *en banc* review of prior precedent and held, contrary to Abdullah, that the FAA, as amended by the Airline Deregulation Act ("ADA"), preempts state regulation of aircraft 'services' but not aircraft 'operation.'" Skidmore v. Delta Air

Lines, Inc., 2000 WL 1844675, at *2 (N.D. Tex., 2000) (citing Hodges v. Delta Airlines, Inc., 44 F.3d 334 (5th Cir. 1995)) (internal citations omitted). The Hodges court explained that "services" would include bargained-for items like "ticketing, boarding procedures, provision of food and drink, and baggage handling …." 44 F.3d at 336. The court further explained that federal preemption of state laws related to services of an air carrier "does not displace state tort actions for personal physical injuries …." Id. However, it is noteworthy that the Hodges decision primarily revolved around the court's interpretation of an ADA provision requiring air carriers to maintain insurance, which is not applicable to the present case. See id. at 337–38.

In Abdullah, the Third Circuit "explicitly acknowledged its disagreement with the Hodges decision on the basic question of whether federal law preempts the entire field of aviation safety from state regulation." Skidmore, 2000 WL 1844675, at *3 (citing Abdullah, 181 F.3d at 372). The Fifth Circuit has not squarely addressed the issue presented to this Court post-Abdullah, but it has acknowledged the Third Circuit's position on the issue. See Witty v. Delta Air Lines, Inc. 366 F.3d 380, 385 (5th Cir. 2004). In Witty, the Fifth Circuit made a narrow finding that a failure to warn claim "must be based on a violation of federally mandated warnings." Id. However, the court rejected extending that decision beyond the precise facts presented in that case. See id.

Based on the existing jurisprudence, this Court finds that the analysis in Hodges best applies to the current situation. See 44 F.3d 334. Because Bullock's conduct during the flight would be considered operations rather than services, this claim is not preempted by federal law. See id. at 336. Accordingly, Defendants' Motion for Summary Judgment

(Record Document 62) is **DENIED** regarding preemption of the state law negligence claim arising out of Bullock's in-flight operational conduct.

    b.  <u>Judicial Admission of Lack of Personal Knowledge</u>

    Defendants argue that Romero's deposition testimony (Record Document 67-4) and certain language in his state court Petition (Record Document 1-1) collectively constitute binding judicial admissions of his lack of personal knowledge concerning the cause of the helicopter crash. <u>See</u> Record Documents 62-1 at 19–20, 73 at 1–4. Specifically, Defendants point to the Petition's assertion that "[t]he [h]elicopter was in flight after its initial ascent when, for reasons unknown at this time, began an immediate descent from its elevation and started to spin uncontrollably." <u>See</u> Record Document 62-1 at 19 (quoting Record Document 1-1 at 4). Additionally, Defendants attached a portion of Romero's deposition testimony, which includes a line of questioning about a briefing video before the flight. <u>See</u> Record Document 62-9. In response to a question about the video, Romero responds that he does not remember anything. <u>See id.</u> at 12. According to Defendants, these statements demonstrate that Romero lacks personal knowledge of the facts underlying his negligence claims, thereby barring him from establishing liability. <u>See</u> Record Document 62-1 at 19–20.

    Plaintiffs respond that Defendants' characterization of the record is misleading. <u>See</u> Record Documents 69 at 2–21, 67 at 14. Plaintiffs have attached Romero's full deposition testimony. <u>See</u> Record Document 67-4. Plaintiffs argue that the alleged judicial admission in the Petition referred to Romero lacking knowledge as to why Bullock went unconscious and any other potential causes of the crash. <u>See</u> Record Document 69 at

20–21. Thus, Plaintiffs argue that Romero did not judicially admit to a lack of personal knowledge. See id.

In Defendants' Reply (Record Document 73), they argue that only the portion of Romero's testimony included in their Motion for Summary Judgment (Record Document 62-9) should be considered, rather than the full deposition submitted by Plaintiffs. See Record Document 73 at 1. The Court first rejects Defendants' contention that it cannot consider the full deposition transcript submitted by Plaintiffs. Under Federal Rule of Civil Procedure 56(c)(3), "[t]he court need consider only the cited materials, but it may consider other materials in the record." Once Plaintiffs filed the full transcript with their Opposition, it became part of the summary judgment record. Thus, the Court can review the entire deposition to ensure an accurate understanding of the witness's testimony.

A judicial admission is a formal, deliberate, and unequivocal concession of fact that is binding upon the party who makes it. See Martinez v. Bally's La., Inc., 244 F.3d 474, 476 (5th Cir. 2001). Judicial admissions have "the effect of withdrawing a fact from contention." Id.

Having reviewed the full transcript, the Court finds that Defendants' excerpt misrepresents the context of Romero's statement. When Romero said he did not remember anything, he was referring only to his inability to recall the pre-flight safety briefing video, not the events of the flight. See Record Document 67-4. The remainder of his deposition includes specific, detailed recollections of events surrounding the crash. See id. This testimony confirms that Romero possesses personal knowledge of relevant facts. Accordingly, the Court finds no judicial admission based on his deposition testimony.

The Court also rejects Defendants' argument that the statement in the Petition[1] constitutes a judicial admission of lack of personal knowledge. The statement simply reflects that, at the time of filing, Romero lacked knowledge as to the precise cause of the crash and the reason Bullock went unconscious. This language is not a deliberate or unequivocal concession, and courts have never required that the plaintiff have full knowledge of all facts when filing suit. Fed. R. Civ. P. 8(a). Thus, the Petition's language cannot be construed as a judicial admission negating Romero's personal knowledge or his right to pursue claims. Accordingly, Defendants' Motion for Summary Judgment is **DENIED** regarding any judicial admission by Romero.

c. Negligent Maintenance of the ELT

Plaintiffs allege that Westwind negligently maintained the helicopter's ELT, which allegedly failed to activate following the crash and delayed rescue. See Record Document 67 at 15. Defendants move for summary judgment, arguing that any claims relating to the maintenance or performance of the ELT are preempted by federal law and that there is no evidence of negligent maintenance. See Record Document 62-1 at 24. Additionally, Defendants urge that Plaintiffs suffered no injury from the ELT malfunctioning. See id. Plaintiffs argue that it is indisputable that the ELT malfunctioned, but they contend that the reason behind the ELT's failure to activate is a question for the jury. See Record Document 67 at 15.

Under Hodges, claims surrounding the maintenance of an aircraft are not preempted by federal law. See 44 F.3d at 337–39. Thus, the Court considers this claim

---

[1] The statement being referenced is that "[t]he [h]elicopter was in flight after its initial ascent when, for reasons unknown at this time, began an immediate descent from its elevation and started to spin uncontrollably." Record Document 1-1 at 4.

first under Louisiana law. The record contains no evidence that the ELT was improperly maintained or that Westwind failed to comply with any applicable inspection or maintenance requirements.  Plaintiffs contend that although the ELT itself was never recovered, circumstantial evidence, including inconsistencies and omissions in Westwind's FAA paperwork and maintenance logs, creates a genuine issue of material fact as to whether the ELT was properly installed and maintained in accordance with federal standards. See Record Document 67 at 16.

Plaintiffs point out that an FAA Form 337 was filed in 1999 documenting the installation of a Pointer 3000-10 ELT but that no corresponding Form 337 was ever filed when the ARTEX ELT (the ELT at the time of the crash) later replaced it. See Record Document 67 at 16–17. Plaintiffs argue this omission violates FAA procedure and shows that the ARTEX ELT was never properly installed, supporting an inference of negligent maintenance. See id.

Westwind argues that no new Form 337 was required because the replacement of one approved ELT model with another did not constitute a "major alteration." See Record Document 73 at 8. Under 14 C.F.R. § 1.1, a Form 337 is necessary only for major alterations that "might appreciably affect the weight, balance, structural strength, performance, powerplant operation, flight characteristics, or other qualities affecting airworthiness." The 2013 logbook entry states that the change produced a negligible weight and balance difference, confirming it was not a major alteration. See Record Document 64-5 at 17.[2] The Court agrees with Defendants. Plaintiffs have provided no

---

[2] The Court notes that although Record Document 64-5 is an Exhibit to Defendants' Daubert Motion (Record Document 64) and unrelated to the pending Motion for Summary Judgment (Record Document 62), the Court can consider all documents in the record under Federal Rule of Civil Procedure 56(c)(3).

authority showing that a Form 337 was required for substitution of an approved ELT model that did not materially alter the aircraft. Plaintiffs' assertion that the absence of a Form 337 rendered the installation defective fourteen years later is unsupported.

Next, Plaintiffs contend that Westwind's ELT inspection entries do not include the language suggested by 14 C.F.R. § 43.11, which requires an entry to certify that work was performed in accordance with the manufacturer's standards. See Record Document 67 at 17. Westwind maintains that § 43.11 does not require inspection entries to quote or reference the manufacturer's manual verbatim. See Record Document 73 at 8. Westwind argues that the regulation was satisfied by the ELT logbook entry stating that the unit was inspected per § 91.207(d) and found to have "no defects." Id. (citing Record Document 62-2 at 18). The Court finds no violation of § 43.11. The regulation requires a signed statement that the inspection was performed and that the aircraft was found to be airworthy or not, but it does not mandate a specific citation to a manufacturer's manual. See id. Even if the language were imperfect, Plaintiffs offer no evidence linking this paperwork to the ELT's non-activation.

Plaintiffs next make a similar argument to the one outlined above, asserting that there was no reference to the ARTEX manufacturer's manual when the ELT switch was replaced. See Record Document 67 at 17. Once again, the Court does not find this argument compelling. See 14 C.F.R. § 43.11. Plaintiffs introduce no evidence that the switch replacement was improper or that it contributed to the ELT's failure to transmit. The Court finds that these documentation discrepancies are insufficient to establish that negligent maintenance caused the ELT to fail.

Plaintiffs concede that the helicopter wreckage, including the ELT, remains lost at sea. See Record Document 67 at 16. Without the device or any inspection records indicating a defect, neither party can determine why the ELT failed to transmit a signal. Plaintiffs nonetheless argue that the reason for the ELT's failure presents a question for the jury. See Record Document 67 at 18. The Court disagrees. A jury cannot speculate as to facts that are wholly unsupported by evidence. Because there is no evidence of negligent maintenance, summary judgment is warranted under Louisiana law.

Although Hodges holds that a negligent maintenance claim would be governed by state law, Plaintiffs allege no facts and show no evidence tying the alleged negligent maintenance to the crash. See 44 F.3d at 337–39. Instead, their argument effectively asserts a broader claim that the ELT should have transmitted a distress signal and that Westwind is liable because it did not. See Record Document 69 at 23–24. If the claim is construed as more of a products liability type claim, then it would be preempted by federal law, as federal law governs aircraft equipment. This Court concludes that summary judgment would be proper regardless of whether state or federal law applies.

The installation and inspections of ELTs are governed by detailed federal regulations. See 14 C.F.R. § 91.207. Under § 91.207(a)(2), the helicopter was required to carry an approved ELT "in operable condition." Additionally, this regulation requires annual inspections for proper installation, battery corrosion, and signal strength. See id. § 91.207(d). These requirements form part of the FAA's comprehensive scheme regulating aircraft equipment. Notably, there is no federal regulation requiring that an ELT actually transmit a distress signal upon impact.

In <u>Witty</u>, the Fifth Circuit held that a passenger's failure to warn claim was impliedly preempted because any duty to warn "must be based on a violation of federally mandated warnings." 366 F.3d at 385. The court explained that when the FAA has not imposed a particular duty, a plaintiff cannot create one under state law without conflicting with the federal scheme. <u>See Id.</u> The same reasoning applies here. Because the FAA's regulations do not require that an ELT successfully transmit after impact, Plaintiffs cannot rely on state negligence law to impose such an obligation.

ELTs are designed to attempt activation upon impact, but federal authorities acknowledge that they frequently fail to operate after severe or water impacts due to antenna separation, submersion, or power loss. An ELT's function is probabilistic, not guaranteed. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiffs' claims alleging negligent maintenance or failure of the ELT.

### d.  Post-Crash Negligence

The facts surrounding Westwind's post-crash conduct are as follows. At approximately 5:10 p.m., the helicopter crashed, and Westwind's Sky Connect Log demonstrates a loss of contact with the helicopter. <u>See</u> Record Document 67-13. At approximately 5:20 p.m., Westwind's Sky Connect system issued an "overdue" alert after losing communication with the helicopter. <u>See</u> Record Document 67-14. During the next hour, Westwind personnel attempted to contact the pilot and aircraft through multiple methods but received no response. At some time between 6:14 and 6:24 p.m., Westwind notified the U.S. Coast Guard, which located the wreckage and began rescuing Plaintiffs at about 6:36 p.m. <u>See</u> Record Documents 67 at 19, 69-4 at 3–4.

Plaintiffs allege that Westwind acted negligently by failing to promptly notify the U.S. Coast Guard after losing contact with the helicopter. <u>See</u> Record Document 67 at 18–19. They contend that Westwind's delay prolonged their exposure in the Gulf and worsened their physical and psychological injuries. <u>See id.</u> Westwind contends that its actions were reasonable and that it followed protocol under Westwind's Emergency Response Plan ("ERP"). <u>See</u> Record Document 62-1 at 25. Additionally, Defendants contend that Plaintiffs cannot prove any post-impact injuries caused by the rescue efforts. <u>See id.</u> The Court must first consider whether state or federal law governs the issue of emergency response timing.

Under OCSLA, Louisiana negligence law applies as surrogate federal law unless inconsistent with federal regulation. <u>See</u> 43 U.S.C. § 1333(2)(A); <u>Grand Isle Shipyard, Inc.</u>, 589 F.3d at 783. Under 14 C.F.R. § 135.79, air carriers and operators are required to "timely" notify an FAA facility or search and rescue facility, "if an aircraft is overdue or missing." Section 135.79(a)(3) acknowledges that there will be some amount of time "reestablishing communications." However, these regulations do not specify the precise amount of time within which an operator must notify rescue authorities after losing communication. That determination is left to the operator's judgment and ERP manuals. Because there is no federal regulation specifying how soon an operator must notify rescue authorities after losing contact, Louisiana state law will apply as a surrogate.

 Accordingly, a negligence claim under Louisiana law requires the plaintiff to prove five elements:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's

injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).

Cosey On Behalf of Hilliard v. Flight Acad. of New Orleans, LLC, 365 So. 3d 76, 88 (La. App. 4th Cir. 2020), writ denied, 312 So. 3d 1097 (La. 2021) (quoting Moore v. Choice Found., 274 So. 3d 33, 37 (La. App. 4th Cir. 2019)). Louisiana law uses the reasonable man standard to determine the duty element. See Cosey, 365 So. 3d at 89. Westwind's standard of care for this claim is a reasonable, ordinary prudent operator under similar circumstances. There is little to no jurisprudence defining how long is "too long" for an operator to notify emergency personnel once an aircraft becomes unresponsive.

Plaintiffs' expert, David Downey ("Downey"), asserts that under Westwind's ERP, another helicopter should have been diverted to the unresponsive helicopter's last known location within 15 minutes after its estimated time of arrival ("ETA"). See Record Document 64-2 at 23–24. Downey states that the ETA was 5:45 p.m. and that Westwind did not dispatch its helicopter until approximately 6:13 p.m., a delay of about 13 minutes beyond the ERP's internal guideline. See id.

Assuming that Downey's description of the ERP is accurate and that Westwind's 13-minute delay constituted a breach of its internal procedures, Plaintiffs' claim still fails for lack of causation. See id. "Cause in fact is generally a 'but for' inquiry; if the plaintiff probably would have not sustained the injuries but for the defendant's substandard conduct, such conduct is a cause in fact." Roberts v. Benoit, 605 So. 2d 1032, 1042 (La. 1991). Plaintiffs' injuries are a result of the crash itself. They present no medical or expert evidence that their injuries were caused or aggravated by Westwind's helicopter being

dispatched approximately 13 minutes later than the timeframe described by Downey. See Record Document 64-2 at 23–24.

Moreover, the record does not clearly establish whether Westwind's aircraft or the U.S. Coast Guard arrived at the scene first. What is clear is that the Coast Guard had already been notified before Westwind's helicopter arrived on scene. See Record Document 64-2 at 6. Thus, any internal delay in Westwind's dispatch could not have materially affected the timing of the rescue efforts.

Plaintiffs' remaining allegations regarding Westwind's post-crash response are vague and lack evidentiary support. See Record Documents 67 at 18–19, 69 at 23–24. Plaintiffs assert that Westwind should have notified the Coast Guard sooner, but they do not present regulations, jurisprudence, or any evidence of custom within the field of aviation to support that assertion. Without evidence demonstrating that Westwind's timing violated an applicable standard of care and caused additional injury, Plaintiffs' negligent notification claim cannot survive. Accordingly, summary judgment is **GRANTED** on this issue.

e.  Negligent Briefing

Next, Plaintiffs allege that Westwind was negligent in failing to adequately brief the passengers prior to takeoff. See Record Document 67 at 20. Specifically, Plaintiffs contend that the safety card provided to them before the flight (Record Document 67-16) was deficient because it did not instruct them on how to locate or activate the helicopter's ELT. See Record Document 67 at 20. Westwind argues that the sufficiency of safety briefings is governed by federal aviation regulations, not state negligence standards. See Record Document 62-1 at 22–24.

Under 14 C.F.R. § 135.117(a)(5)–(6), all passengers must be orally briefed on the "location of survival equipment," and "[i]f the flight involves extended overwater operation, ditching procedures and the use of required flotation equipment …." Along with this oral briefing, there must be printed cards located in the aircraft for passengers to view and read. See 14 C.F.R. § 135.117(e). This regulation states that each card must be appropriate for the specific aircraft, contain a diagram showing the method of operation of emergency exits, and **"[c]ontain other instructions necessary for the use of emergency equipment"** on the aircraft. See id. at § 135.117(e)(1)–(3) (emphasis added). However, this Court cannot find, and Plaintiffs have not cited, any law requiring that passengers be briefed on how to manually activate an ELT.

Because the federal regulations specifically address the scope and content of passenger safety briefings, this area is governed by federal law rather than Louisiana negligence law. See Witty, 366 F.3d at 385. In Witty, the Fifth Circuit specifically stated that "federal regulatory requirements for passenger safety warnings and instructions are exclusive and preempt all state standards and requirements." Id.

Because no federal regulation requires that passengers be briefed on how to manually activate the ELT, and because Plaintiffs identify no evidence of a violation of the briefing requirements set forth in § 135.117, their negligent briefing claim fails as a matter of law. Westwind's Motion for Summary Judgment (Record Document 62) on this claim is **GRANTED.**

**CONCLUSION**

Based on the reasons explained above,

**IT IS ORDERED** that the Motion for Summary Judgment (Record Document 62) filed by Defendants Westwind Helicopters, Inc. ("Westwind") and Starr Indemnity and Liability Company ("Starr") (collectively, "Defendants") is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Motion is **GRANTED** with respect to Plaintiffs' claims involving the pre-flight medical fitness of pilot James Bullock ("Bullock"), negligent maintenance of the ELT, post-crash negligence in notifying rescue authorities, and negligent briefing. These claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **DENIED** with respect to the in-flight operational conduct of Bullock and any argument based on a judicial admission of Robert Romero lacking personal knowledge.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 2nd day of December, 2025.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE